322-0285, the people of Stateville, Illinois, are bailed by Laura Bailon v. Christopher Dewey v. Carl McGrath. Are both sides ready to proceed? Yes. Ms. Bailon, you may proceed. May it please the Court. Counsel, Laura Bailon on behalf of the people. In this case, defendant was charged with multiple counts, including multiple counts of unlawful sale of drug paraphernalia in October of 2016. He was released on bond the next day, and he did not demand a speedy trial. Defendant later filed a motion to suppress. In this motion to suppress, he argued that search warrant complaints, which were written by the main case agent, Agent Anthony Anderson, did not establish probable cause for the searches. In the supplement to the motion to suppress that defendant filed later, that was based on phone calls between defendant and Anderson about terms used in the drug trade went undried. When the case was almost three years old, the motion to suppress was ruled on, and the case was set for trial. The case was later continued multiple times due to the COVID-19 pandemic, due to witness unavailability, and due to family medical issues that attorneys for both sides had going on. Then, in preparing for the May 3rd, 2022 trial, the prosecutor noticed that he had not filed the expert witness list. Upon discovering this mistake, he filed it on April 29th. Included on this expert witness list was the main case agent, Anthony Anderson. Defendant responded to this late disclosure with a motion to bar all expert testimony. Seeking as an alternative to- Had Anderson been disclosed as a witness generally? The prosecutor actually made two mistakes. One was not disclosing the expert witness list, and the other was not disclosing the witness list. While Anderson's reports had been disclosed in a timely fashion, and Anderson's complaint and affidavit for search warrant had been disclosed, and the information Anderson would provide was disclosed, no witnesses had actually been listed until April 29th. So it's not like a misdemeanor where you say, we're going to call any and all witnesses listed in the police reports. They're required to name the witnesses they're going to call, and that didn't happen either. Yes, that did not- Was there ever a request by the defense, hey, who are the witnesses? No, there wasn't such a request. So there had been earlier- Was there a reciprocal discovery? Yes, yes. So the people still were required to file these lists. The only list that had been filed- There had been lists filed earlier, but they listed witnesses as pending. They listed expert witnesses as pending. So the state doesn't dispute that they should have filed the list with the actual names much sooner than a couple days prior to trial. However, this does go to the point of surprise. Obviously, the state has been called some witnesses. They couldn't have trial with no witnesses. So as to whether this is an inadvertent oversight or bad faith, it's clearly a mistake. The prosecutor stated that it was a mistake. It's filing in its trial posture leading up to May 3rd, the week before he's preparing for trial, and that's when he catches that these prior lists just said pending. So on April 29th, that's when this mistake is discovered and both lists are filed. So the trial judge granted the motion to bar testimony that was filed was as to the expert testimony, and there were two experts named on that list. One was the main case agent, Anthony Anderson, and the other was a DEA agent, Agent Wood, and Agent Wood had not been-his name hadn't been in any other prior reports, and so that's the difference between these two. So they were in much different positions from each other. And as to Agent Anderson, whose name was disclosed, he was the main case agent. His reports were disclosed. He authored the affidavit for search warrant that was the subject of multiple years of litigation. As to Agent Anderson, the sanction of barring the testimony was too severe, amounting to an abuse of discretion. And that's because exclusion of evidence is a last resort as a discovery sanction because it doesn't contribute to the truth-seeking goal of discovery, and if a continuance would protect a defendant from surprise or prejudice, then a continuance is the preferred sanction. Here, a continuance would do so because Anderson was the main case agent, and Anderson was-his reports were disclosed. His qualifications are detailed over multiple pages in the complaint research warrant. That complaint research warrant was-defendant, even in his motion to suppress, is taking issue with noting that these are just the case agent's opinions based on his training and experience. And there's the supplement to the motion to suppress with the calls, clearly understanding that the terms used in the calls are critical. So based on what the discovery was, Anderson's opinions were not a surprise. While he should have been- Wait a minute. Excuse me in a moment. Is it your position that you can never issue the sanction, this evidence cannot command or this person cannot testify if the trial has not been caused? Is that essentially what you're arguing? That is not what the state's arguing, as demonstrated by the fact that the state is not challenging the sanction as to DEA agent Wood. So where Wood, his name really didn't appear anywhere in discovery, and he hadn't been-there had maybe been discussions with a prior attorney about a different DEA agent, and under those circumstances, we're accepting that the trial judge was within his discretion, even though that was pretrial, to bar that evidence. He would have been within his discretion to allow continuance instead, but the sanction as to expert witness that is clearly the heart of the case, that was obvious to both sides in the trial court. Defense counsel even referred to it as critically important evidence for the state. He recognized that and the state agreed that. The charges are unlawful sale of drug paraphernalia, and the opinions in this affidavit for search warrant are that these items are drug paraphernalia. Then in this case, it's a clear mistake, and while it still doesn't excuse the lack of earlier filing of the expert witness list, the continuance here is more appropriate given what the discovery was as to Anderson. If he's tangential or not disclosed, that's a different situation, but here where he is clearly the main witness, the witness unavailability that the case was continued for was for Anderson, and the defendant had recognized that these were expert opinions in the motion to suppress litigation. So not only were the opinions disclosed in the reports, and the only thing that changed is the official formal filing of the expert witness list, but the defendant had also recognized in the footnote to the motion to suppress that these were expert opinions that were going to be important in the case. When the case was continued because of Anderson's unavailability, I don't recall this, so I'm going to ask. Was there an objection by the defense to the continuance because of Anderson's unavailability? Do you know? I don't remember. I'm sorry, Your Honor. Because he hadn't been disclosed as a witness at that point either. Correct. Continue. So, yeah, I just don't remember, but it was clear that they planned on calling Anderson. And while some experts, it would have taken a crystal ball to predict, this particular expert is replete with the discovery and the multiple years of litigation that had already occurred. So given that what his opinions are is not a surprise, the extreme sanction of total exclusion of the expert testimony was too severe. Defendant argues that formal disclosure of the expert prompts certain responses, and those responses would have been inappropriate prior to the formal filing. And a continuance can allow defendants to engage in all those responses. So the people aren't contending that he should have been required to engage in those earlier. However, a continuance will allow him to take whatever steps he wishes to take now to prevent any prejudice. Additionally, the people would note that the defendant was out of custody, and he had not requested a speedy trial, and the disclosure was made before trial. So under the case law, these are factors that support a continuance versus the total exclusion of the evidence that barring the testimony does. In this case, where a continuance would have prevented any prejudice to the out-of-custody defendant while furthering the truth-seeking function of discovery, it should have been the remedy chosen in this case. Completely barring Anderson's expert testimony was an abuse of discretion. So the people would ask that this court reverse the trial judge's order barring Agent Anderson's expert testimony. Justice Hedlund, any additional questions? No, no, it's fine. Justice Walker? No. Thank you. I'll have an opportunity for rebuttal. Thank you, Your Honor. Mr. Bratz. Thank you, Your Honor. Make these records, counsel for the state. My name is Chuck Bratz. I'm here on behalf of the defendant, Christopher Dewey. We all know that the state's obligation to comply with Rule 412 is not optional, and in Will County there's a local rule that you do not have to file a formal written motion. It is mandatory that both sides comply with 412 and 413. 412, of course, requires the state to provide certain materials and information, including names, addresses of witnesses, and, of course, reports and statements of experts along with a statement of qualifications. They did neither of that. And in addressing the issues raised in this appeal, in the context of this mandatory disclosure requirements, the history of the case really becomes pivotal because this isn't a situation where, well, he's out on bond so it's not really a big deal. So the bill of indictment in this case was returned on November 17th of 2016. The state was ordered to provide discovery to the defense pursuant to 412 and the Will County local rules by 1219 of 16. The defense, by the way, filed discovery on 1213 of 16. The state then files discovery on the following 10 dates. 1223 of 16, 14 of 17, 16 of 17, 130 of 17, 411 of 17, 622 of 17, 928 of 17, 523 of 18, 821 of 18, and then, finally, the 10th and final filing was on April 29th of 2022. Multiple years later, the Friday before the scheduled trial date of May 3rd, 2022, the Friday afternoon, as I'm sitting in my office having finalized my trial strategy based on the discovery that had been filed, the state provides me with the discovery filing that is the subject matter of this appeal. What's extremely relevant and what makes this blatant failure to comply with Rule 412 so egregious is that the May 3rd of 2022 trial date was the eighth time that this case had been set for trial. It doesn't matter if it was continued because of COVID. It doesn't matter if it was continued because an unavailable witness or an attorney had some personal matter going on. Eight times the state had announced ready for trial and a trial date had been set in this cause. Mr. Bretz, do you know the answer to the question? At any time when the state asked for a continuance because of the unavailability of Anderson, was that an agreed continuance or did the defense object? Do you know? In reference to the last time we were set for trial, what happened was we came in, we announced ready for trial. There was the hearing of the motion to bar witnesses, the expert witnesses, which was granted. I'm going back in time. Oh, back in time. My understanding is that according to the state, this case was continued at least one time because of witness unavailability being Anderson as the witness. I don't recall there being a continuance when Anderson was not available, but for a long period of time in here, I was basically acting as local counsel to Bob Rasch and Tom Durkin, who were heading the case. You understand why I'm asking the question. If I was the trial judge and someone said, I want a continuance because of Anderson, well, Anderson is not a witness. He's never been tendered. We object to continuance. I'm just wondering if… Well, I will tell you that… …that type of a discussion ever happened. Yeah. The discussion of there not being any witnesses listed did not come up until we commenced the bench trial this last time up. And what happened, interestingly enough, in context of that, is that Judge Cornelius ruled that they could call witnesses, occurrence witnesses, who had – we had their reports and we knew what they were going to say, but he made a distinguishment between those occurrence witnesses and Anderson being called as an expert. So they did have an evidence technician they were going to bring in. We were going to start the trial, and then as you may have seen in the transcript, there was some sort of COVID contact that he may have had, and rather than break the trial up into multiple pieces, we got a short date, and then in the meantime, they filed their certificate of impairment. I recognize that there is a – you have the local court rule. You don't have to make a specific demand. Everyone has to comply with 412. The state suggested that there was actually a reciprocal discovery order. But at some point – and I know that defense has no burden, but at some point, I'm a defense attorney. I'm like, state, where's my witness list? Does that – is there – when it comes to this question of surprise and the factors we're balancing, I mean, do we hold the defense to any responsibility to say, hey, state, how about a list of witnesses? Well, interesting question, Your Honor, and I think based on the fact that they have the burden of proof that I have absolutely zero obligation to go to them and say, hey, how are you going to prove your case? What witnesses are you going to call? It's up to them. There's an affirmative obligation on them to list those witnesses, to provide me with the materials that the rules require in order to – that I can properly prepare to defend the case. But, counsel, didn't you already know all about Anderson based on the motion to suppress? Didn't you already have all his reports and information? I had reports and information. Excellent question. What I did not have is everything that I believe that 412 requires. There was some reference to him possibly having some knowledge in the industry. There was reference to him being the lead case agent for sure. But in reference to him then transitioning from someone who was investigating the case to someone who was now an expert as to matters that were pivotal in the case, that I did not have. And so I prepared my defense based on the fact that he was not testifying as an expert until I got that notice on that Friday afternoon before the trial, six years after the case has been filed, after eight trial settings. Then they disclosed this. And the problem with what occurred was that this is not just a scenario where everything is laid out in the search warrant affidavits as they want us to believe. This is a scenario where there is a pivotal issue that they wanted to have Anderson testify to. In the first eight counts of the 12-count bill of indictment, there is an element that the state had to prove as to whether or not whatever the particular item was that they were alleging was drug paraphernalia that was intended for unlawful use. And that's a question of fact. And they didn't list any witnesses, as we know, at all. And they didn't have any witnesses of written reports that would come in and say, I bought this from Mr. Dewey, and I used this. Or any police reports that said, we followed the trail of what Dewey sold to this person, and then this person was illegally using this. How they were going to prove that is they were going to track Agent Anderson in, and he was just going to give extra testimony like, oh, yes, in my vast experience, this was going to be used unlawfully. So we have them trying to, on the eve of a six-year-old case, trying to bring him in and introduce him as an expert that's going to prove an ultimate question in the case that we haven't prepared for. And if, in fact, they had done this in a timely manner, we certainly would have filed a motion to bar or limit the extent of his testimony so that he couldn't come in there and testify in the manner that they are proceeding, just in a conclusionary manner without having to explore the basis and foundation before he would give these expert opinions. In addition to that, we would have done extensive other preparation ourselves, such as researching a defense expert, perhaps additional lay witnesses that could testify as to legal use of what Mr. Dewey was selling. But we didn't do any of that because it wasn't necessary, because they never disclosed him as an expert. Mr. Bretz, the information that you received regarding Anderson or Ford, did it contain any information or any disclosure that he would testify to those opinions as an expert? I think you said no, but I want to make sure. No, no. There was nothing that said that he was going to testify. I mean, there was certain information that he was the lead case agent, for sure, and there was certain information in reference to his experience, but nothing that said that he is going to be our primary witness to testify to these matters at trial. And in the compliance research report, he explained why what might be legal products in certain respects could be paraphernalia for purposes of how he claimed it would be used. Yes, but certainly in our mind, a different scenario, different context, different standard than someone then coming into court and qualifying as an expert to testify before the court. And so while they're claiming that we're aware of this, we believe that basically the awareness on their side of the importance of this witness actually cuts against them, not against us. It's not as if, hey, we're on notice. They're on notice. Is this their critical witness? Then how did they let six years go by without naming this guy? How did they let eight trial settings go by without naming this guy? So in my mind, there is no way that you can look at this and say that this fair disclose is not in bad faith, that there wasn't some willfulness about that. But counsel, all the case law that I could find says that under these circumstances, when it's before trial, the preferred remedy is to just grant the continuance because both sides, the ends of justice are served by having a trial with proper procedure and full disclosure. Excellent question, and I believe the answer is this. When you're looking at these issues in light of these specific cases, as I read the cases, everything is fact specific. Like the Rubino case that they rely on is a completely different scenario. Very early on in the case, there had been a change of assistant state's attorneys, gave it to them before the trial date, not in the Friday before. And I really think that the real question here is whether or not Judge Cornelius abused his discretion, whether we can find that decision. And so how do we define that? What the state talks about, well, it's too harsh, and this isn't the preferred thing, but that's not the question, respectfully, for this court to decide. As our Supreme Court in Becker and Clattis and other cases defined abusive discretion as an occurrence where the trial court's decision is arbitrary, fanciful, or unreasonable, which is a decision that no reasonable person would agree with the position adopted by the trial court. That's absolutely not the case here. And saying it's harsh or saying that something else is preferred does not rise to the level of being arbitrary, fanciful, or unreasonable so that no reasonable person would adopt that position. Would you agree as a practical matter that based upon this sanction, the state is not going to be able to prevail on most of these charges?  As a practical matter. I think that there is three sets of charges here. One is the eight counts of the bill of indictment that have to do with the paraphernalia. There's two counts that have to do with the alleged use of identification that wasn't Mr. Dewey's, and then there's two money laundering counts. As to the, it certainly would be disingenuous of me not to say that not having Anderson would be harmful to their case in reference to the first eight counts. But again, therein I think lies the critical juncture there. If they know that this is their critical witness, how is this not, you know, bad faith for them not to list this person over a six-year span in eight trial settings, and then the question becomes is what Judge Cornelius ruled an abuse of discretion? As to bad faith, because that obviously would seal the deal in some respects, my understanding is that we may have acknowledged some discussion between Mr. Raja and the state in terms of Anderson and expert testimony. I don't know that it's really clear what that discussion was, but there's at least an acknowledgement that the state wasn't, I know they didn't take advantage of the affidavit suggested by Judge Cornelius, but there was some suggestion that, okay, yeah, we can see there was some nature of discussion as that. And if that's the case, are we really talking bad faith? Well, in my mind, it makes it, again, all the more egregious that you identify that there's a need to name your experts, and then you just don't do it. I mean, so the, and then you say, oh, well, I was preparing the six-year-old case for trial the week before after eight trial settings, and all of a sudden I discovered we hadn't named any experts. I mean, I don't know how you can say there's any sort of due diligence involved there at all. And what happened in this scenario is the assistant state's attorney said, well, you know, I had this discussion with Bob Raja, and we talked about, you know, I may be naming some other witnesses and things, and we had this agreement, at least in my mind we had an agreement. And I'm not stating that perhaps he, I'm not here to accuse an assistant state's attorney of lying to the court. Perhaps that's what he thought. But when I got a hold of Bob Raja, who obviously I worked with as co-counsel, he told me the exact opposite. That, yeah, he said something to me, and I said, well, file whatever you're going to file, and I'll wait for it. And then nothing ever got filed because he said our intention was to file a motion to bar some of these purported opinions because it was critical for trial. And when they never filed it, we never did anything because at this point, why would he? It's a six-year-old case. We're prepared to go to trial with the evidence that we have. Our time is up. Judge Hedda? No further questions. Thank you very much for listening. Ms. Bailey. Addressing the issue of bad faith, the light disclosure of Anderson as an expert was an unintentional oversight, not bad faith. But people aren't contending that what happened wasn't a mistake. It was a mistake. It was true the list was late.  It was really close to trial. However, the mistake just wasn't noticed until right before trial. That makes it late, but it doesn't make it bad faith. Counsel might not have an obligation to ask, hey, where's your witnesses? However, he knows clearly some witnesses aren't going to be called, so clearly there had been a mistake. The prosecutor admitted making a mistake. He admitted it was his fault and explained that he didn't catch it until preparing for trial. Should he have caught it earlier? Yes, but he didn't, and the question now is what is the appropriate remedy for what did happen? So to Justice Brennan's point, there was a dispute over exactly what was said. The prosecutor called and texted Mr. Roshan and didn't reach him, but defense counsel did. And defense counsel did acknowledge that prior counsel recalled having discussions with the prosecutor about calling DEA agent Reynolds as an expert, and he remembered that because he knew where Reynolds' wife worked. So they were anticipating a motion to bar. They were anticipating expert witnesses. So the surprise was actually that they didn't file them. Now, because the state hadn't formally filed the witness list, defense counsel wasn't required to engage in this responding to expert witness protocol, wasn't required to file a motion to bar these experts that hadn't been disclosed. However, at this point, with the disclosures that had been made about Anderson, including the multiple police reports and the search warrant affidavit, which defendant recognized that he took issue with the items of drug paraphernalia, calling them not contraband per se, and pointing out this is a common law, the impounded common law record in 42, the defendant was arguing that these opinions of the affiant officer were entirely based on his own personal, professional opinion, citing his long-term experience. But the jury already has been waived. The jury had already been waived, yes. So isn't the defense entitled to rely upon, they screwed up, they can't prove this case. They haven't identified an expert. I'm going to waive jury because the judge is going to follow the law. So while the jury had been waived, the fact remains that the purpose of discovery is still to seek the truth. A continuance can still provide the opportunity to respond to this disclosure, however defendant likes. The fact of the matter is that no witness had been sworn yet. So given that no witness had been sworn yet, the trial hadn't started for double jeopardy purposes and it doesn't prevent the taking of an appeal. Except we're trying to figure out what the appropriate sanction is for the state's six-year failure to disclose any witnesses, which is pretty basic. And the defendant is acting upon the state's six-year failure. And so when you say, well, we just didn't get around to it when it's on the eve of trial and the defendant has already waived jury, how are you going to put the defendant back in a position that they would be in if the state had timely disclosed? Because they've already waived jury. If they had timely disclosed, we could give them the opportunity to have a jury trial, if that's what he so desired. And just give the defense the opportunity to seek whatever expert witnesses they wish to see, to file whatever motion to fire as they wish to see. Just bring it back to the point where, and I think even because it would be remanded, I think it would need to, you would need to waive jury again anyway. So I believe that he could just be given the chance to file the motions he says are part of the normal expert witness response protocol. Are there any further questions? So you're asking that we overturn Judge Cornelius' decision and allow Anderson to testify and restrict that testimony to what had already been disclosed to the defense counsel? We're asking that the order barring Anderson from testifying as an expert be reversed and Anderson be allowed to testify as an expert. And I believe that based upon what was in the discovery, these opinions were in it. But what if the state wanted him to testify to other opinions? Could they then disclose other opinions and have defense counsel deal with those? I believe so. Thank you, Your Honors. Any additional questions? No, sir. Justice Albrecht? Yeah. We thank both counsels for their arguments. The matter will be taken under advisement and a decision will be rendered in due course. Thank you.